**UNITED STATES of America, Appellee,**

v.

**Norman BURNETT, Defendant–Appellant.**

**No. 1192, Docket 91–1666.**

United States Court of Appeals, Second Circuit.

Argued April 28, 1992.

Decided June 30, 1992.

Norman R. Blais, Burlington, Vt. (Blais, Cain, Keller & Fowler, of counsel), for defendant-appellant.

Thomas D. Anderson, Asst. U.S. Atty., District of Vermont, Burlington, Vt. (Charles A. Caruso, U.S. Atty. for the District of Vermont, David V. Kirby, Chief, Criminal Div., of counsel), for appellee.

Before: TIMBERS, MESKILL and NEWMAN, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment of conviction entered in the United States District Court for the District of Vermont, Billings, *J.* Defendant-appellant Norman Burnett pleaded guilty to possession with intent to distribute marijuana in violation of 21 U.S.C. § 841.[1] A conspiracy count was dismissed. On appeal Burnett challenges the inclusion, pursuant to United States Sentencing Guidelines (Guidelines) § 1B1.3, of 3 kilograms of cocaine as relevant conduct in calculating his base offense level.

According to a stipulation of facts made pursuant to the plea agreement, in December 1988 Burnett drove William Riley from Burlington, Vermont to the Trapp Family Lodge in Stowe, Vermont, waited inside the car while Riley met with individuals for approximately 15 or 20 minutes, and then drove Riley to the Backyard Cafe, also in Stowe. A few days later Burnett purchased a bale of marijuana from Riley.

In calculating Burnett's base offense level the presentence report included as relevant conduct both the bale of marijuana, which weighed 22 pounds, and 4 kilograms of cocaine supplied to Burnett by an individual named Dale Dubois. In an earlier paragraph the report totaled the amount of cocaine at 3 kilograms.

Burnett objected to the inclusion of any amount of cocaine in the calculation of his base offense level. The district court conducted an evidentiary hearing to resolve the issue and to clarify how many kilograms of cocaine had been sold. At the hearing the government called Dubois as a witness. Although his testimony was at times ·contradictory, Dubois testified that he had sold defendant 2 kilograms of cocaine in the summer of 1988 and a third kilogram in the fall of 1988. Burnett also testified at the hearing and denied that the sales had occurred.

The sentencing judge concluded that the government had established by a preponderance of the evidence that Burnett had purchased 3 kilograms of cocaine and added that amount to the 22 pounds of marijuana, which resulted in a base offense level of 28. The judge made certain adjustments, not relevant to this appeal, which resulted in an offense level of 24. He sentenced Burnett within the Guidelines range to 53 months imprisonment followed by 5 years conditional supervised release.

Burnett claims that the district court erred in its determination that, under Guidelines § 1B1.3(a)(2), 3 kilograms of cocaine should be included as relevant conduct in calculating his base offense level. Burnett contends that (1) the court's finding of his involvement with the 3 kilograms of cocaine was clearly erroneous because it was not supported by credible evidence,

---

1. According to the Memorandum of Agreement Burnett agreed to plead guilty to Count Five. The Memorandum incorrectly described Count Five as charging Burnett with a conspiracy in violation of 21 U.S.C. § 846. Count Five actually charged Burnett with knowingly and intentionally possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). The judgment reflects that Burnett was convicted of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841 pursuant to Count Five and that Count One, a conspiracy count, was dismissed. The presentence report confirms that Burnett was convicted of a substantive marijuana count.

and (2) there was insufficient evidence from which the court could find that the cocaine constituted relevant conduct.

Under the Guidelines a defendant's base offense level is determined based on "relevant conduct." *See* Guidelines § 1B1.3. "Relevant conduct" includes "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(2). The sentencing judge may include in his sentencing calculation quantities of narcotics that were not charged in the indictment. *See United States v. Cousineau*, 929 F.2d 64, 67 (2d Cir.1991). Unless they are clearly erroneous we must accept both the district court's determination that the alleged conduct involving the additional amounts of cocaine has been established by a preponderance of the evidence and its conclusion that such conduct was relevant conduct for sentencing purposes. *See id.*

We are not persuaded by Burnett's argument that the district court's factual finding that he had purchased 3 kilograms of cocaine is clearly erroneous. Burnett points to inconsistencies in Dubois' testimony in order to cast doubt on Dubois' credibility and argues that without corroborating evidence Dubois' testimony cannot be believed. Initially Dubois had stated that he sold defendant "[t]wo kilos, three kilos" of cocaine. On cross examination, redirect examination and recross examination, however, Dubois clarified his prior statement and insisted that he had distributed to defendant a total of 3 kilograms of cocaine— "[t]wo during the summer, one in the fall." The sentencing judge discredited Burnett's testimony denying that he received any cocaine, and, instead, credited the testimony of Dubois. We defer to a sentencing judge's credibility determinations, *see id.* at 67, and, therefore, we uphold the judge's factual finding that Dubois sold Burnett 3 kilograms of cocaine because it was properly supported by the evidence.

Burnett also contends that there was insufficient evidence from which the district court could find that the cocaine transactions were "relevant conduct" with-

in the meaning of the Guidelines. He argues that there was no testimony that connected the Dubois cocaine transactions with the marijuana offense. Burnett misperceives the law in this area. "[W]e have repeatedly held that quantities and types of narcotics uncharged in the offense of conviction can be included in a defendant's base offense calculation if they were part of the 'same course of conduct' or part of a 'common scheme or plan' as that offense." *United States v. Perdomo*, 927 F.2d 111, 114 (2d Cir.1991) (citations omitted). The term "same course of conduct" has a meaning distinct from "common scheme or plan" and, unlike the latter, does not require a connection between the acts. As we explained in *Perdomo:*

> The "same course of conduct" concept ... looks to whether the defendant repeats the same type of criminal activity over time. It does not require that acts be "connected together" by common participants or by an overall scheme. It focuses instead on whether defendant has engaged in an identifiable "behavior pattern" of specified criminal activity.

*Id.* at 115 (citations omitted).

The evidence was sufficient to support the conclusion that the cocaine transactions constituted relevant conduct. Dubois' testimony supports a finding that Burnett has engaged in an identifiable behavior pattern of narcotics activity. Burnett's participation in two narcotics transactions during the same year as the offense of conviction has sufficient similarity and temporal proximity to the marijuana offense to constitute such a pattern of behavior. *See United States v. Santiago*, 906 F.2d 867, 872–73 (2d Cir.1990).

There was no error in counting a different type of narcotics as relevant conduct. With respect to offenses that may be grouped pursuant to multi-count analysis, *see* Guidelines § 3D1.2(d), the Guidelines require a sentencing court to include as relevant conduct all acts committed by the defendant, or for which he is "otherwise accountable," *id.* § 1B1.3(a)(1), "that were part of the same course of conduct or com-

mon scheme or plan as the offense of conviction," *id.* § 1B1.3(a)(2). Drug offenses may be grouped, even though they involve different types of drugs. *Id.* §§ 2D1.1, Application Notes 6 & 10; 3D1.2(d). More significantly, the Commission has made it clear that, if the "course of conduct" or "common scheme or plan" standards are met, drug transactions may be considered relevant conduct even though they involve a type of drug different from that involved in the count of conviction. *See* § 1B1.3 Commentary (Background) ("Similarly, in a drug distribution case, quantities and *types* of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.") (emphasis added); *see also* § 2D1.1, Application Note 12. We agree with the Eighth Circuit that relevant conduct may include different types of drugs, as long as the criteria of the relevant conduct guideline are satisfied. *See United States v. Payne,* 940 F.2d 286, 292–93 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991); *United States v. Lawrence,* 915 F.2d 402, 406–08 (8th Cir.1990).

Accordingly, we affirm the district court's determination that two prior cocaine purchases constituted relevant conduct within the meaning of Guidelines § 1B1.3(a)(2).