**UNITED STATES of America, Appellee,**

v.

**Juan RODRIGUEZ, Defendant–Appellant,**

**Zenon D. Rodriguez, Defendant.**

**No. 863, Docket 91–1415.**

United States Court of Appeals, Second Circuit.

Submitted Feb. 1, 1993.

Decided March 22, 1993.

John M. Apicella, Brooklyn, NY, for defendant-appellant.

Mary Jo White, U.S. Atty., Susan Corkery, Seth L. Marvin, Asst. U.S. Attys., E.D.N.Y., Brooklyn, NY, for appellee.

Before: MESKILL, Chief Judge, FEINBERG and JACOBS, Circuit Judges.

MESKILL, Chief Judge:

This is an appeal from a sentence entered on a judgment of the United States District Court for the Eastern District of New York, Glasser, *J.*, convicting defendant-appellant Juan Rodriguez (Rodriguez), upon his plea of guilty, of manufacturing counterfeit United States currency, in violation of 18 U.S.C. §§ 471, 2 and 3551 *et seq.* Rodriguez seeks resentencing claiming that (1) the United States Sentencing Guidelines (Guidelines) offense level used in calculating his sentence was erroneous because it was based on an amount of counterfeit currency which included both passable and unusable "washed" counterfeit currency seized from his apartment, and (2) he is entitled to the benefit of an amendment to the Guidelines that became effective subsequent to his sentencing, which allows a three level decrease for acceptance of responsibility.

## BACKGROUND

On February 6, 1990, appellant's brother, Zenon Rodriguez (Zenon), was arrested as he attempted to sell approximately $125,000 in counterfeit United States currency to undercover agents. That evening, based on information provided by Zenon and pursuant to an oral search warrant, agents searched an apartment in Queens, New York leased by Rodriguez. The search resulted in the recovery of a massive amount of counterfeit currency including, as summarized in the police inventory, "[a]pproximately 3½ million dollars in assorted counte[r]feit U.S. Currency" and "twenty-two ... large garbage bags of washed

counterfeit currency (estimated $15 million dollars)." The "washed" counterfeit currency had been washed in a clothes washing machine after production. In his brief, Rodriguez asserts that the washed counterfeit was unusable "garbage" that was merely awaiting destruction. Also recovered in the search were a plate maker, a printing press, photographic equipment, paper cutters, aluminum offset and litho plates, inks, film development trays, two safes and a .38 caliber handgun.

After his arrest, Zenon agreed to cooperate with the government and provided detailed information about Rodriguez's involvement in the counterfeiting operation. On February 7, 1990, a warrant was issued for Rodriguez's arrest. On February 16, 1990, while leaving a Bronx apartment with a suitcase containing approximately $365,-000 in counterfeit currency, Rodriguez was arrested.

On May 23, 1990, Rodriguez offered to plead guilty to manufacturing counterfeit currency, in full satisfaction of a six count indictment charging him and Zenon with various offenses relating to the counterfeiting operation. Under oath, Rodriguez admitted his knowing and willful manufacture of counterfeit currency and admitted that over $18 million in counterfeit currency was recovered from his apartment. The district court accepted the plea.

Rodriguez's pre-sentence report used a Guidelines base offense level of 9 pursuant to Guidelines § 2B5.1(a).[1] The offense level was increased by 15 levels under Guidelines §§ 2B5.1(b)(1) and 2F1.1(b)(1)(P) based on the production of more than $10 million in counterfeit currency. The adjusted offense level of 24 was then decreased by 2 levels pursuant to Guidelines § 3E1.1 for acceptance of responsibility. Thus the proposed total offense level was 22, with a

sentencing range of 41–51 months incarceration.

On September 17, 1990, Rodriguez appeared before the district court for sentencing. Rodriguez argued, *inter alia*, that it was erroneous to include the $15 million of "garbage money" in the sentencing calculations because it clearly could not have been passed as counterfeit money. The court rejected this argument and accepted the recommendations in the pre-sentence report, including the two level reduction for acceptance of responsibility. With a sentencing range of 41–51 months, the district court imposed a sentence of 48 months. Rodriguez timely filed a notice of appeal.

## DISCUSSION

A. *Amount of Currency Includable Under the Guidelines*

■ Rodriguez contends that $15 million of the $18.5 million of counterfeit currency seized from his apartment should be excluded from the sentencing calculations under the Guidelines because it was "garbage" currency that was not intended to be distributed. The question before us is whether it was error for the district court to consider the manufacture of the $15 million in counterfeit currency which was seized as "washed currency" in its calculation of Rodriguez's sentence for production of counterfeit currency.

■ When applying the Guidelines to the facts, the determination of what conduct is relevant to the calculation of the defendant's base offense level is reviewed for clear error. *United States v. Vazzano*, 906 F.2d 879, 883 (2d Cir.1990); *see also United States v. Burnett*, 968 F.2d 278, 280 (2d Cir.1992) ("Unless they are clearly erroneous [this Court] must accept both the district court's determination that the alleged conduct involving the additional

---

**1.** Section 2B5.1 of the 1990 version of the Guidelines provides:
*Offenses Involving Counterfeit Bearer Obligations of the United States*
(a) Base Offense Level: *9*
(b) Specific Offense Characteristics
(1) If the face value of the counterfeit items exceeded $2,000, increase by the corresponding number of levels from the table at § 2F1.1 (Fraud and Deceit).

(2) If the defendant manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting, and the offense level as determined above is less than *15*, increase to *15*.

amounts of [criminal activity] has been established by a preponderance of the evidence and its conclusion that such conduct was relevant conduct for sentencing purposes."); *United States v. Castagnet*, 936 F.2d 57, 58–59 (2d Cir.1991). The district court indicated that it had found by a preponderance of the evidence that Rodriguez was responsible for the production of more than $10 million but less than $20 million of counterfeit currency. It is therefore clear that the district court, in applying Guidelines §§ 2B5.1(b)(1) and 2F1.1(b)(1)(P), considered the "washed currency" relevant to sentencing for the offense of conviction, 18 U.S.C. § 471.[2] We review this determination for clear error.

Section 1B1.3 of the Guidelines, entitled "Relevant Conduct (Factors that Determine the Guideline Range)," provides that an offense level under the Guidelines shall be based upon

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

. . . .

(3) all harm that resulted from the acts or omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts or omissions.

Guidelines § 1B1.3(a)(1) and (3). In this Circuit, "a defendant's base offense level is determined based on 'relevant conduct[ ]' ... [which] includes 'acts and omissions that were part of the same course of conduct or common scheme or plan as the

offense of conviction.' " *Burnett*, 968 F.2d at 280 (quoting Guidelines § 1B1.3 and (a)(2)).

In a case similar to this one, the Eighth Circuit upheld a sentencing judge's inclusion of a quantity of partially completed counterfeit currency in its offense level calculations pursuant to Guidelines § 2B5.1. *United States v. Lamere*, 980 F.2d 506 (8th Cir.1992). The case involved convictions for possession, concealment and attempting to pass counterfeit currency and the Eighth Circuit held that the partially completed currency demonstrated the defendants' intent to possess and pass that amount of counterfeit currency. *Id.* at 514. The court determined that the district court was not clearly erroneous in its holding that the partially completed currency reflected relevant conduct properly considered under the Guidelines.[3] We agree with the Eighth Circuit that counterfeit currency counted for purposes of Guidelines § 2B5.1(b)(1) need not be of passable quality and we hold that the district court was not clearly erroneous in including the $15 million of washed currency in calculating Rodriguez's offense level.

In the case at hand, the conviction is for the manufacture of counterfeit currency. The washed currency may have come off the presses defective or for other reasons may have been headed for the trash heap; however, its production was at least an act committed by Rodriguez that was part of the same course of conduct as the offense of conviction and that occurred during the commission of the offense of conviction. Thus the production of the full $18.5 million of counterfeit currency is relevant conduct properly considered by the district court in sentencing.

**2.** 18 U.S.C. § 471 provides: "Whoever, with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation or other security of the United States shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

**3.** The *Lamere* Court cited a proposed but never adopted amendment to the Guidelines that would have directed the sentencing court not to

count discarded defective currency, stating that the amendment's rejection "further evidence[s] an intention that the courts should appropriately consider less than perfectly completed counterfeit bills." 980 F.2d at 513 (citing proposed Application Note 4 to Guidelines § 2B5.1 which states: "For purposes of subsection (b)(1), do not count items that obviously were not intended for circulation (e.g. discarded defective items)." 54 Fed.Reg. 9,132 (1989)).

## B. Applicability of the Guidelines Amendment

■ At sentencing, Rodriguez received a reduction of two offense levels for acceptance of responsibility pursuant to Guidelines § 3E1.1.[4] On appeal, more than two years after the imposition of sentence, Rodriguez seeks the benefit of a November 1, 1992 amendment to Guidelines § 3E1.1 which allows an additional reduction of one level under specified circumstances.[5]

■ A sentencing court must generally apply the version of the Guidelines that is in effect at the time of sentencing, 18 U.S.C. § 3553, unless there is an *ex post facto* problem. *United States v. Paccione*, 949 F.2d 1183, 1204 (2d Cir.1991) (citing *United States v. Adeniyi*, 912 F.2d 615, 618 (2d Cir.1990)), *cert. denied*, —— U.S. ——, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992); *see also* Guidelines § 1B1.11(a) (1992) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."). An *ex post facto* problem normally arises when the version of the Guidelines used at sentencing results in a more severe sentence than that which would have resulted had the Guidelines version in effect at the time of commission of the crime been applied. This

exception is not applicable to the case at hand. As we have previously stated, "Congress did not wish appellate courts on direct review to revise a sentence in light of changes made by the Commission after the sentence has been imposed." *United States v. Colon*, 961 F.2d 41, 46 (2d Cir. 1992).

Section 1B1.10 of the November 1, 1992 version of the Guidelines, entitled "Retroactivity of Amended Guideline Range (Policy Statement)," provides that:

> (a) Where a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the guidelines listed in subsection (d) below, a reduction in the defendant's term of imprisonment may be considered under 18 U.S.C. § 3582(c)(2). If none of the amendments listed in subsection (d) is applicable, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement.

Title 18 U.S.C. § 3582(c)(2) provides for modification of imposed terms of imprisonment.[6] The November 1, 1992 amendment to the Guidelines' acceptance of responsibil-

---

**4.** At the time of Rodriguez's sentencing, Guidelines § 3E1.1 provided as follows:

*Acceptance of Responsibility*
(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by *2* levels.
(b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.
(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

**5.** Effective November 1, 1992, Guidelines § 3E1.1 provides:

*Acceptance of Responsibility*
(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by *2* levels.
(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a)

is level *16* or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:
(1) timely providing complete information to the government concerning his own involvement in the offense; or
(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease the offense level by *1* additional level.

**6.** 18 U.S.C. § 3582 provides, in pertinent part:

*Imposition of a sentence of imprisonment*
. . . .
*(c) Modification of an imposed term of imprisonment.*—The court may not modify a term of imprisonment once it has been imposed except that—
. . . .
*(2)* in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently

ity provision is not among those listed in subsection (d) of Guidelines § 1B1.10. Therefore, we conclude that Rodriguez is not entitled to the benefit of the November 1, 1992 amendment to Guidelines § 3E1.1.

## CONCLUSION

Accordingly, we affirm the judgment and sentence of the district court.

been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.