56 F.3d 62
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jerrad Dewayne CAULDER, Defendant-Appellant.
 No. 94-5784.
 United States Court of Appeals, Fourth Circuit.
 Submitted April 25, 1995.
Decided May 23, 1995.
 
 William E. Martin, Federal Public Defender, Gregory Davis, Assistant Federal Public Defender, Greensboro, NC, for Appellant. Walter C. Holton, Jr., United States Attorney, Scott Patrick Mebane, Assistant United States Attorney, Coleman Cowen, Thirdyear Law Student, Greensboro, NC, for Appellee.
 Before HALL, MURNAGHAN, and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Jerrad Dewayne Caulder pled guilty to conspiracy to manufacture counterfeit federal reserve notes, 18 U.S.C. Secs. 371, 471 (1988), and was sentenced to a term of 13 months. He appeals his sentence, contending that the district court erred in using the face value of partially completed currency to enhance his offense level, USSG Sec. 2B5.1(b)(1),* and in refusing to decrease his offense level under USSG Sec. 2X1.1(b)(2), which provides for a reduction when the offense is a conspiracy unless the conspirators were close to completing the substantive offense. We affirm.
 
 
 2
 A confidential informant turned over to authorities eighteen counterfeit $20 bills which were printed by Jerrad Caulder, Johnny Pittman, and Richard Parrish. The informant said the conspirators had discussed destroying the currency printed to that point. Caulder's house was searched, and counterfeit $20 bills with a face value of $11,900 were seized from Caulder's closet. Some of the bills were printed front and back in blue ink; the rest were printed in black ink on one side only. Caulder reportedly was the instigator of the counterfeiting, while Pittman and Parrish did the printing.
 
 
 3
 Caulder pled guilty to conspiracy to manufacture counterfeit currency. To calculate his offense level, the probation officer applied guideline section 2B5.1(b)(1), which provides:
 
 
 4
 If the face value of the counterfeit items exceeded $2,000, increase by the corresponding number of levels from the table at Sec. 2F1.1 (Fraud and Deceit).
 
 
 5
 Because the face value of all the counterfeit bills was more than $10,000, the probation officer increased the base offense level by 3 levels. USSG Sec. 2F1.1(b)(1)(D).
 
 
 6
 Caulder objected to the enhancement, arguing that the printed bills were not "counterfeit items" as defined in the commentary to guideline section 2B5.1 because they were obviously not genuine. Application note 2 defines "counterfeit," as used in the guideline, to mean "an instrument that purports to be genuine, but is not, because it has been falsely made or manufactured in its entirety." The district court decided that the enhancement was properly made because the bills were printed for test purposes, and those printed in blue might conceivably have been passed as genuine, under the right conditions. (JA-I at 17, 25). It relied on the Eighth Circuit decision in United States v. Lamere, 980 F.2d 506, 512-13 (8th Cir.1992), which held that incomplete or imperfect counterfeit bills should be considered in determining an enhancement under USSG Sec. 2B5.1(b)(1).
 
 
 7
 We review de novo the district court's decision that "counterfeit items" includes imperfect or incomplete counterfeit bills because interpretation of the guideline is required. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989). Other circuits which have interpreted the guideline have held that incomplete or imperfect counterfeit bills are "counterfeit items" which should be considered in determining the enhancement. See United States v. Ramacci, 15 F.3d 75, 78-79 (7th Cir.1994) (bills printed on one side); Lamere, 980 F.2d at 513 (incomplete bills); United States v. Rodriguez, 989 F.2d 583, 585-86 (2d Cir.1993) (ruined bills to be discarded).
 
 
 8
 Caulder attempts to distinguish these cases from his own by pointing out that in none of them were the defective bills printed in an unusual color. He also cites several cases in which convictions for counterfeiting were reversed because the counterfeit bills were not of passable quality. See United States v. Ross, 844 F.2d 187, 189-90 (4th Cir.1988) (crude black and white copy); United States v. Johnson, 434 F.2d 827, 829-30 (9th Cir.1970) (pinkish bills printed on one side); United States v. Smith, 318 F.2d 94, 94-95 (4th Cir.1963) (paper slips had too little resemblance to genuine currency).
 
 
 9
 However, Caulder pled guilty to participating in a conspiracy to manufacture counterfeit bills, and does not challenge his conviction.
 
 
 10
 Moreover, the district court found that the blue bills could be passable in bad light. Specific offense characteristics are determined based on all relevant conduct. USSG Sec. 1B1.3(a). The production of the defective currency was relevant conduct because it was part of the same course of conduct as the offense of conviction. USSG Sec. 1B1.3(a)(1); Ramacci, 15 F.3d at 79; Rodriguez, 989 F.2d at 586. Therefore, the district court did not err in making the enhancement.
 
 
 11
 Caulder also requested a 3-level decrease in the offense level under guideline section 2X1.1(b)(2), which directs a decrease if the offense is a conspiracy
 
 
 12
 unless the defendant or a co-conspirator completed all the acts [they] believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.
 
 
 13
 The district court decided against a decrease because the defendants were close to completion of all acts necessary for the substantive offense and there was no hard evidence that they had decided not to go forward with it.
 
 
 14
 Caulder argues on appeal that a 3-level decrease in offense level was required under section 2X1.1(b)(2) because the conspirators had not taken the final steps to produce passable counterfeit currency when authorities intervened, and had talked about destroying the imperfect currency.
 
 
 15
 However, as the district court found, the conspirators needed only to change the ink color to produce passable counterfeit bills. Caulder did not present any actual evidence that the conspirators intended to end the conspiracy without producing passable counterfeit bills. Therefore, the district court did not clearly err in adopting the probation officer's recommended factual finding that the conspirators were about to complete all acts necessary to commit the object offense.
 
 
 16
 The sentence imposed by the district court is therefore affirmed. We dispense with oral argument because the facts and legal conten tions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 United States Sentencing Commission, Guidelines Manual (Nov.1993)