**UNITED STATES of America,**
**Appellee,**

v.

Pedro VINCENTE, a/k/a "Anbel Calderon," a/k/a "Anhel Calderon," a/k/a "Manolo Vunte," a/k/a "Pedro Venetas," a/k/a "Manolo," a/k/a "Angel Calderon"; Jose Alcantara, a/k/a "Jose Aquino," a/k/a "Quinito," Defendants,

Guillermo Pina, a/k/a "Guillermo," a/k/a "Lebron," a/k/a "Pinas," a/k/a "Julio," a/k/a "Loez," a/k/a "Garcia," a/k/a "Argendo," a/k/a "Danny Pena," **Defendant–Appellant.**

No. 00–1524.

United States Court of Appeals, Second Circuit.

April 26, 2001.

Bobbi C. Sternheim, New York, NY, for appellant.

Marc L. Mukasey, Assistant United States Attorney for the Southern District of New York; Mary Jo White, United States Attorney, Meir Feder, Michael Kim, Assistant United States Attorneys, on the brief, New York, NY, for appellee.

Present WINTER, STRAUB and POOLER, Circuit Judges.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Defendant–Appellant Guillermo Pina appeals from a judgment entered July 27, 2000, following his guilty plea, in the United States District Court for the Southern District of New York (Harold Baer, Jr.

*Judge* ), sentencing him to a term of forty years' imprisonment to run consecutively after the undischarged portion of a twenty-nine-year sentence for a set of unrelated convictions in Puerto Rico.

The facts of this case are not in dispute. On November 24, 1994, officers of the New York City Police Department ("NYPD") were dispatched to an automobile salvage yard in Flushing, New York in response to a call from the yard's owner who had discovered two plastic bags laying near a trash can. When the officers arrived and opened the first of the bags, they found the head and torso of a man who was later identified as Juan DeLeon ("DeLeon"). The officers discovered DeLeon's legs in the second plastic bag.

A joint investigation conducted by the NYPD and the Drug Enforcement Administration ("DEA") revealed that DeLeon's murder was arranged by members of a group known as the 99 th Street Organization ("Organization"), which distributed heroin out of a bodega in Corona, New York. Pina was one of the leaders of the Organization during 1992 and 1993. In 1994, the Organization's business was disrupted by several robberies committed by DeLeon, a customer of the bodega. Consequently, the Organization contacted Pina and offered to pay him for murdering DeLeon.

On November 24, 1994, Pina and his co-defendants waited in the bodega for DeLeon to enter. Pina then shot DeLeon in the back of the neck, killing him. DeLeon's body was left in the locked store while Pina and his co-defendants left to obtain a large knife. They then returned to the murder scene where Pina cut off DeLeon's legs to more easily dispose of the body. After amputating DeLeon's legs, Pina and his co-defendants put the torso and legs in plastic garbage bags and disposed of them in the Flushing salvage yard. In July 1999, NYPD officers and DEA agents arrested Pina in Puerto Rico where he was serving a 29 year sentence for robbery and weapons convictions that resulted from unrelated crimes committed after DeLeon's murder.

On March 30, 2000, Pina pled guilty to a three-count felony information charging conspiracy to murder in aid of racketeering and attempt to commit murder in aid of racketeering, both in violation of Title 18, U.S.C. § 1959(a)(5), and conspiracy to distribute and possession with intent to distribute heroin, in violation of Title 21, U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C) and 846. At sentencing, the court applied 2000 United States Sentencing Commission Guidelines ("Guidelines") Section 5G1.3(c), which permits district courts to impose concurrent or consecutive sentences as necessary to "achieve a reasonable punishment for the instant offense," and ruled that Pina's 40 year sentence for conspiring to murder and attempt to murder should run consecutively with the remaining time on his prior sentence.

On appeal, Pina contends that the District Court erred when it imposed a forty-year sentence to run consecutively, rather than concurrently, to the undischarged portion of his prior twenty-nine-year sentence. He further claims that the court erred when it applied the current version of Section 5G1.3(c) of the Sentencing Guidelines, in effect at the time of sentencing, rather than the Guidelines in effect in 1994, when he committed the offenses.

 We review a district court's application of a sentencing guideline to the facts of a case under an abuse of discretion standard. *See United States v. Velasquez,* 136 F.3d 921, 923 (2d Cir.1998); *United States v. Trupin,* 117 F.3d 678, 688 (2d Cir.1997). Additionally, issues not raised in the trial court, including sentencing is-

sues, will be deemed waived on appeal and only addressed upon a showing that the district court committed plain error. *United States v. Keppler,* 2 F.3d 21, 23 (2d Cir.1993).

Turning first to the District Court's use of the 2000 Guidelines, we note that a sentencing court must generally apply the version of the Guidelines in effect at the time of sentencing. *See* 18 U.S.C. § 3553(a)(4)(A). The only exception to that rule occurs in the limited instance when application of the current Guidelines creates an *ex post facto* problem. *See, e.g., United States v. Rodriguez,* 989 F.2d 583, 587 (2d Cir.1993); *United States v. Paccione,* 949 F.2d 1183, 1204 (2d Cir.1991). An *ex post facto* problem arises if "the version of the Guidelines used at sentencing results in a more severe sentence than that which would have resulted had the Guidelines version in effect at the time of commission of the crime been applied." *Rodriguez,* 989 F.2d at 587. Therefore, Pina must demonstrate that had the 1994 Guidelines been applied, he would have received a less severe sentence than he received under the 2000 Guidelines. Our past decisions, however, have established that if a defendant could have received an identical sentence "in the absence of the alleged error," the district court's application of the Guidelines is not in error. *See, e.g., United States v. Diaz,* 176 F.3d 52, 118 (2d Cir.1999); *Keppler,* 2 F.3d at 24. Thus, if Pina could have received a consec-

utive sentence under the 1994 Guidelines, his claim must fail.

Section 5G1.3 (c) of the 1994 Guidelines provides that a "sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense." Our decisions have made it abundantly clear that Guidelines using this language allowed district courts discretion to impose consecutive rather than concurrent sentences. *See, e.g., United States v. McCormick,* 58 F.3d 874, 878 (2d Cir .1995) (*per curiam*); *United States v. Whiteley,* 54 F.3d 85, 87 (2d Cir.1995). Therefore, since Pina could have received a consecutive sentence under both the 1994 and 2000 Guidelines, no *ex post facto* problem arises and the District Court committed no error by applying the 2000 Guidelines.[1]

Pina also contends that even if the 2000 Guidelines are to be used, the District Court failed to recognize its discretion to impose a partially concurrent sentence. The 2000 Guidelines provide, in § 5G1.3(c), that "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." It is therefore clear that the District Court maintains discretion in choosing whether to apply a concurrent or consecutive sentence. *See, e.g., United*

---

1. Pina argues that Application Note 3 to the 1994 version of Section 5G1.3(c) compels a concurrent rather than consecutive sentence. It states:

 "[t]o the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed ... had all of the offenses been feder-

al offenses for which sentences were being imposed at the same time."

Even if we are to read this provision in the way Pina urges, we have "made clear that Application Note 3 is advisory and not binding on district courts." *United States v. Margiotti,* 85 F.3d 100, 105 (2d Cir.) (*per curiam*) (citing *United States v. McCormick,* 58 F.3d 874, 878 (2d Cir.1995) (*per curiam*)), *cert. denied,* 519 U.S. 940, 117 S.Ct. 324, 136 L.Ed.2d 238 (1996).

*States v. Acevedo,* 229 F.3d 350, 357 (2d Cir.), *cert. denied,* 531 U.S. 1027, 121 S.Ct. 602, 148 L.Ed.2d 514 (2000). And contrary to Pina's claims, the record shows that the District Court considered a concurrent sentence, correctly assuming that it had discretion to so rule. Given the heinous nature of the offense, however, the court rejected that approach in favor of a consecutive sentence. Because the District Court properly recognized and exercised its discretion, we find no error.

For the reasons set forth above, we AFFIRM the judgment of the District Court.