23-6353
*United States v. Dunnigan*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of February, two thousand twenty-five.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> DENNIS JACOBS,
> GUIDO CALABRESI,
> *Circuit Judges,*

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.                                                          23-6353

ROMAN DUNNIGAN,

*Defendant-Appellant.*

_____

For Defendant-Appellant:          MARK BYRNE, Law Office of Mark J. Byrne, Buffalo, NY.

For Appellees:          SEAN C. ELDRIGE (Tiffany H. Lee, Katherine A. Gregory, Assistant U.S. Attorneys, *on the brief*), *for* Trini E. Ross, U.S. Attorney for the Western District of New York, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Arcara, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Roman Dunnigan ("Dunnigan") appeals a final judgment of conviction entered by the United States District Court for the Western District of New York (Arcara, *J.*) for conspiring to traffic 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a), (b)(1)(b), and sentencing him to 264 months of incarceration. On appeal, Dunnigan alleges an omnibus of errors warranting reversal of his conviction or resentencing. He principally contends that evidence from a car search should have been suppressed, his speedy trial rights were violated, the evidence was insufficient to convict him, and his sentence was procedurally unreasonable. We assume the parties' familiarity with the facts of the case, procedural history, and arguments, repeating only what is necessary to explain our decision to **AFFIRM**.

## I.   Motion to Suppress

Dunnigan contests the admission of evidence found during a car search. That warrantless search was initiated after a narcotics dog jumped into an open door of Dunnigan's car and alerted. On appeal, Dunnigan contends the district court improperly credited the testimony of the K-9 handler, Officer Fisher, who testified that he did not encourage his dog to jump into Dunnigan's car.[1] We review the district court's findings for clear error. *United States v. Smith*, 967 F.3d 198, 204–05 (2d Cir. 2020).

---

[1] The parties agree that a dog's jump into the car on its own volition does not violate the Fourth Amendment.

Upon review, we are not left with "the definite and firm conviction that a mistake has been committed." *United States v. Martinez*, 110 F.4th 160, 174 (2d Cir. 2024) (citations omitted); *United States v. Bershchansky*, 788 F.3d 102, 110 (2d Cir. 2015). Any inconsistent testimony Fisher gave as to the dog's "alerts" and "indications" arose out of a confusion of vocabulary rather than lack of credibility, as made evident by the district court's request that Fisher clarify and not conflate the terms. We have taken care to distinguish inconsistencies evincing a lack of credibility from those demonstrating "confusion, mistake, or faulty memory." *United States v. Josephberg*, 562 F.3d 478, 494–95 (2d Cir. 2009). The district court drew this distinction and found Fisher credible by pointing to his experience, candor, and expertise. It did not clearly err in doing so. *Mathie v. Fries*, 121 F.3d 808, 812 (2d Cir. 1997) (expressing "particularly strong deference" where "the district court premises its findings on credibility determinations" (citations omitted)).

**II.      Speedy Trial Rights**

This Court reviews a district court's decision on a motion to dismiss for a violation of speedy trial rights for abuse of discretion. *United States v. Hoskins*, 44 F.4th 140, 153 (2d Cir. 2022). To determine if a defendant's Sixth Amendment rights have been violated, a court must consider the length of the delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant. *Id.*; *Barker v. Wingo*, 407 U.S. 514, 533 (1972).

We discern no abuse of discretion in the district court's weighing of the *Barker* factors. The district court correctly found that the length of delay favored Dunnigan, as approximately three years had passed since the indictment. But delay alone is not sufficient to establish a Sixth Amendment violation. *United States v. Cabral*, 979 F.3d 150, 157 (2d Cir. 2020); *Doggett v. United States*, 505 U.S. 647, 655–56 (1992). That is true here, where Dunnigan's assertions of his rights were "too belated to weigh significantly in his favor," occurring over two years after the

3

indictment and after he sought extensions, requested changes of counsel, and did not object to several continuances. *Rayborn v. Scully*, 858 F.2d 84, 92–93 (2d Cir. 1988); *United States v. Reyes-Batista*, 844 F. App'x 404, 408 (2d Cir. 2021) (summary order) (concluding a defendant did not sufficiently assert his rights where he "sought extensions, agreed to continuances, routinely filed motions to terminate counsel, and did not assert his speedy trial right for an entire year").[2] Much of the delay was attributable to Dunnigan, who, shortly before his case was to be tried, requested new counsel and filed additional motions. *United States v. Aquart*, 92 F.4th 77, 98 (2d Cir. 2024) ("[T]he reasonable time required to . . . respond to, and resolve [pretrial] motions is valid delay not raising speedy trial concerns."). The other notable delay—the district court "overlook[ing]" Dunnigan's venue motion—although attributable to the prosecution, was "more neutral," and did not account for the majority of the elapsed time. *Barker*, 407 U.S. at 531. Finally, as to prejudice, Dunnigan has not shown that "the prejudice at the core of the Speedy Trial right—that the delay of the trial itself"—"caused prejudice, such as through the fading of memories or unavailability of witnesses." *United States v. Ghailani*, 733 F.3d 29, 51 (2d Cir. 2013); *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir. 1980). For these reasons, the district court did not abuse its discretion in concluding that Dunnigan's Sixth Amendment rights were not violated.[3]

---

[2] Dunnigan's objection to venue did not amount to an assertion of his Sixth Amendment rights, as it would not have put the government "on notice" about his concerns regarding the timing of his trial. *See United States v. Black*, 918 F.3d 243, 263–64 (2d Cir. 2019). Dunnigan's challenges to venue also lacked merit. Dunnigan's travel from Rochester to Houston to traffic narcotics was sufficient to confer venue for the conspiracy charge. *See, e.g.*, *United States v. Tzolov*, 642 F.3d 314, 320 (2d Cir. 2011) (finding travel through an airport sufficient to confer venue for conspiracy charges); *United States v. Nathan*, 476 F.2d 456, 461–62 (2d Cir. 1973) (same). And the district court did not abuse its discretion in refusing to transfer the case to the Southern District of Texas, because transfer would have delayed trial and because evidence related to the stash house and flights to Houston were in New York—as were Dunnigan and his co-defendant. *United States v. Maldonado-Rivera*, 922 F.2d 934, 966–67 (2d Cir. 1990); *cf. Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 242–44 (1964).

[3] The district court also properly denied Dunnigan's Speedy Trial Act claims because Dunnigan's suppression motion was pending during the 142 days he claims were not covered by the Act's exceptions.

**III.    Sufficiency of the Evidence**

We review *de novo* Dunnigan's challenge to the jury verdict based on sufficiency of the evidence, viewing the evidence in the light most favorable to the government. *United States v. Zheng*, 113 F.4th 280, 292 (2d Cir. 2024); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We will affirm where "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). To convict Dunnigan, a jury had to find beyond a reasonable doubt that 1) there was a conspiracy to traffic narcotics, 2) that Dunnigan "had knowledge of the conspiracy," and 3) that Dunnigan "intentionally joined the conspiracy." *United States v. Barret*, 848 F.3d 524, 534 (2d Cir. 2017) (quoting *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008)).

We conclude that there was sufficient evidence for a rational juror to have convicted Dunnigan. The government presented evidence of Dunnigan's conspiracy to travel to Houston with Henry Lloyd to purchase cocaine, package it in Intex inflatable furniture boxes, and ship it back to New York for distribution. The jury heard about Dunnigan and Lloyd's attempt to fly out of the Buffalo airport, which was thwarted when Lloyd was stopped for carrying tens of thousands of dollars in cash.[4] At the airport, Lloyd arranged to meet up with an agent for the DEA, supposedly to tell him what "was going on" in connection with this travel, but the jury learned that Lloyd

---

See 18 U.S.C. § 3161(h)(1)(D) (exempting "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"); *Henderson v. United States*, 476 U.S. 321, 332 (1986) (excluding over one year from the Speedy Trial Act due to a pending suppression motion); *United States v. Tinklenberg*, 563 U.S. 647, 653 (2011) (explaining pretrial motions stop the Speedy Trial Act clock upon filing).

[4] *See, e.g.*, *United States v. Nersesian*, 824 F.2d 1294, 1325 (2d Cir. 1987) ("[P]ossession of large amounts of cash . . . might justify a suspicion, in context, of [drug] trafficking."); *cf. United States v. Sokolow*, 490 U.S. 1, 4 (1989) (discussing, as a "typical attempt" to smuggle narcotics, purchasing tickets with a large amount of cash on hand); *id.* at 9 ("[F]ew vacationers carry with them thousands of dollars in $20 bills.").

thereafter skipped the meeting to fly from Rochester to Houston with Dunnigan. In Houston, Dunnigan and Lloyd were stopped by Houston police, after they were observed purchasing an Intex box and returning to their hotel room with a bag from an unidentified vehicle.[5] When confronted by Houston police, while in possession of the Intex box, Dunnigan and Lloyd gave inconsistent answers about what the box was for and lied about their travel history.[6] Upon searching the car, police discovered cocaine hidden in the box. Finally, police found a vacant "stash house" in Dunnigan's apartment complex, which contained a receipt in Dunnigan's name, several Intex boxes, and burner phones featuring communications between Dunnigan and Lloyd's aliases.[7] From this evidence, the jury could amply infer that Lloyd and Dunnigan had knowledge of and agreed to participate in a conspiracy to traffic cocaine, and the district court appropriately denied Dunnigan's motion for judgment of acquittal.

Accordingly, the district court also did not abuse its discretion in denying Dunnigan's motion for a new trial based on the sufficiency of the evidence. *United States v. Gramins*, 939 F.3d 429, 444 (2d Cir. 2019); Fed R. Crim. P. 33(a). The government presented multiple, consistent accounts describing Lloyd and Dunnigan's attempt to fly from Buffalo with tens of thousands in

---

[5] *See United States v. Tussa*, 816 F.2d 58, 63 (2d Cir. 1987) (affirming evidence was sufficient to convict of conspiracy to distribute narcotics because a defendant took part in a meeting with dealers); *Neresian*, 824 F.2d at 1330 (pointing to presence during a drug delivery and possession of large amounts of cash as probative of participation in narcotics conspiracy).

[6] *United States v. Aleskerova*, 300 F.3d 286, 293–94 (2d Cir. 2002) (concluding there was sufficient evidence of conspiracy based on travel plans coinciding with critical moments of conspiracy, as well as false statements made to the police); *United States v. Snow*, 462 F.3d 55, 68–69 (2d Cir. 2006) (reasoning that presence at a crime scene can support the inference of association under certain circumstances).

[7] *United States v. Rios*, 856 F.2d 493, 496–97 (2d Cir. 1988) (finding sufficient evidence of participation and knowledge of conspiracy to distribute cocaine where evidence in a stash apartment listed a Defendant's name among the drug transaction records); *United States v. Monsanto Lopez*, 798 F. App'x 688, 691 (2d Cir. 2020) (summary order) (concluding there was sufficient evidence to convict based on items tying a defendant to a stash house).

cash, their attempted trafficking in Houston, and how items in the stash apartment implicated them. This evidence was not "patently incredible" such that it would be a manifest injustice to let the verdict stand. *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992); *United States v. Bell*, 584 F.3d 478, 483 (2d Cir. 2009).

**IV.        Sentence**

We review the reasonableness of Dunnigan's sentence for abuse of discretion. *United States v. Vinales*, 78 F.4th 550, 552 (2d Cir. 2023). "A sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates) the Sentencing Guidelines range." *Id.* (quoting *United States v. Singh*, 877 F.3d 107, 115 (2d Cir. 2017)). Here, Dunnigan contends the district court improperly calculated his sentence by concluding that evidence found in the stash house justified an increase of his base offense level from 24 to 30, as well as enhancements for possession of a gun, U.S.S.G. § 2D1.1(b)(1), and maintaining a premises for drug manufacturing or distribution, *id.* § 2D1.1(b)(12). We disagree.

A Guidelines calculation must be based on a defendant's "relevant conduct." *United States v. Helm*, 58 F.4th 75, 88 (2d Cir. 2023); *United States v. Shonubi*, 103 F.3d 1085, 1088 (2d Cir. 1997). Such conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). Conduct is relevant for sentencing if it is "part of the same course of conduct . . . as the offense of conviction," *id.* § 1B1.3(a)(2), determined by looking to "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses," *id.* § 1B1.3 cmt. n.5(B)(ii).[8]

---

[8] More specifically, we have held that "quantities and types of narcotics uncharged in the offense of conviction can be included in a defendant's base offense calculation if they were part of the 'same course of conduct' . . . as that offense." *United States v. Perdomo*, 927 F.2d 111, 114 (2d Cir. 1991); *United*

7

The district court did not abuse its discretion in finding the narcotics in the stash house to be relevant conduct. Evidence in the stash house evinced the same method of trafficking—hiding drugs in consumer product boxes, most notably Intex boxes. And the apartment was discovered approximately one month after Dunnigan was apprehended for similar behavior in Houston. Because the evidence in Houston and the stash house demonstrated conduct "perpetrated in the same style and with the same" materials over a short period of time, the district court could rely on the evidence as the "same course of conduct" for sentencing. *See, e.g.*, *United States v. McCormick*, 993 F.2d 1012, 1013 (2d Cir. 1992); *United States v. Burnett*, 968 F.2d 278, 280 (2d Cir. 1992) (including, as relevant course of conduct, acts from within a year of the offense of conviction).

Nor did the district court abuse its discretion in applying the enhancements for maintaining a "premises for the purpose of manufacturing or distributing a controlled substance," U.S.S.G. § 2D1.1(b)(12), and possession of a dangerous weapon, *id.* § 2D1.1(b)(1). Evidence in the apartment—a receipt with Dunnigan's name on it and a gun, in a locked safe, with traces of Dunnigan's DNA—suggested that Dunnigan "controlled access to, or activities at," the stash house. *See id.* § 2D1.1 cmt. n.17; *United States v. Holley*, 638 F. App'x 93, 98 (2d Cir. 2016) (summary order) (affirming application of the enhancement where a defendant was arrested near a stash apartment that contained his shoes, mail, and keys); *United States v. Ortega*, 94 F.3d 764, 768 (2d Cir. 1996) (explaining § 2D1.1(b)(1) enhancement is warranted where the defendant "constructively possessed the weapon" by having dominion over the premises where the gun was found); *United*

---

*States v. Burnett*, 968 F.2d 278, 280 (2d Cir. 1992); *see also* U.S.S.G § 1B1.3(a)(2) (applying to "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts"); *id.* § 3D1.2(d) (grouping offenses where the "level is determined largely on the basis of . . . the quantity of a substance involved").

*States v. Sweet*, 25 F.3d 160, 163 (2d Cir. 1994) (affirming application of § 2D1.1(b)(1) enhancement where a gun was "present on the premises where the drugs were being stored").

\* \* \*

We have considered Dunnigan's remaining arguments and find them to be without merit.[9]

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[9] Dunnigan's claims of juror misconduct are speculative, and thus the district court did not abuse its discretion in dismissing them.