16-1111-cr
*United States v. Latchman Singh*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2016

(Argued: February 23, 2017        Decided:   December 12, 2017)
Docket No. 16-1111-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

*- against -*

LATCHMAN SINGH,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:
KEARSE, HALL, and CHIN, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the

Southern District of New York (Forrest, *J.*) convicting defendant-appellant, upon

his guilty plea, of illegally reentering the United States after having been

removed following a conviction for an aggravated felony.  Defendant-appellant

contends that his sentence of 60 months' imprisonment -- which was nearly three

times the top of the applicable Guidelines range -- was both procedurally and

substantively unreasonable.

VACATED AND REMANDED.

DINA MCLEOD , Assistant United States Attorney
(Micah W.J. Smith, Assistant United States
Attorney, *on the brief*), *for* Joon H. Kim, Acting
United States Attorney for the Southern District
of New York, New York, New York, *for Appellee*.

COLLEN P. CASSIDY, Federal Defenders of New York,
Inc., New York, New York, *for Defendant-
Appellant*.

CHIN, *Circuit Judge:*

In this case, defendant-appellant Latchman Singh pleaded guilty to

one count of illegally reentering the United States after having been removed

following a conviction for an aggravated felony. His Guidelines range was 15 to

21 months' imprisonment, and both the government and the Probation Office

recommended a within-Guidelines sentence. The district court, however,

sentenced Singh to a term of imprisonment of 60 months -- nearly three times the

top of the Guidelines range.

Singh appeals, contending that the sentence was both procedurally and substantively unreasonable. For the reasons set forth below, we vacate the sentence and remand for further proceedings. Singh's request that we order reassignment of the case to a different judge is denied.

## BACKGROUND

**A.** *The Facts*

The facts are largely undisputed and are summarized as follows:

**1.** *Singh's Personal History*

Singh was born in Guyana on September 9, 1971, and has never been a citizen of the United States. He was one of five children, and he and his family moved to the United States when he was still a child. After residing with Singh's uncle in Florida for a year, the family moved to New York City. Although his parents separated, they both still live in the Bronx. Three of his siblings also live in the Bronx, and one lives in upstate New York.

In 1997, Singh married a woman who was a permanent resident of the United States. Together they had a daughter, now approximately seventeen years old. Before his arrest, he lived with his wife and their daughter in the Bronx and had a positive relationship with both.

## 2. *The Offense Conduct*

Singh was convicted in the Southern District of New York of larceny and postal theft on February 22, 1995. He was thereafter sentenced to twelve months' imprisonment. The conviction qualified as an aggravated felony within the meaning of 8 U.S.C. § 1326(b). On December 21, 2004, an immigration judge ordered Singh removed from the United States, and he was eventually removed from the country on April 9, 2010.

At some point after his removal, Singh illegally reentered the United States, and he was arrested by the New York City Police Department (the "NYPD") in the Bronx on February 9, 2012. On March 21, 2012, he was again ordered removed from the country based on the reinstatement of his earlier removal order. On May 16, 2012, he was once again removed from the United States.

At some point thereafter, Singh illegally reentered the United States again, as on June 26, 2014, he was arrested, once again, by the NYPD in the Bronx. This was his second illegal reentry into this country. Federal agents took him into custody on July 21, 2015.

### 3. *Singh's Criminal History*

In addition to the 1995 conviction for larceny and postal theft, Singh had been convicted of seven other crimes when he appeared for sentencing in this case:

- a conviction in 1993 for possession of stolen property (stolen mail) for which he was sentenced to a $100 fine;

- two convictions in 1994 for receiving stolen property for which he was sentenced to concurrent terms of imprisonment of 3 months and home confinement of 3 months;

- a conviction in 2002 for forgery for which he received a conditional discharge and was sentenced to a $500 fine;[1]

- a conviction in 2002 for petit larceny for which he received a conditional discharge;

- a conviction in 2012 for shoplifting for which he was sentenced to time served (72 days) and 10 hours of community service; and

---

[1] *See* N.Y. Penal Law § 65.05(1)(a) (2017) ("[T]he court may impose a sentence of conditional discharge for an offense if the court, having regard to the nature and circumstances of the offense and to the history, character and condition of the defendant, is of the opinion that neither the public interest nor the ends of justice would be served by a sentence of imprisonment and that probation supervision is not appropriate.").

- a conviction in 2014 for petit larceny for which he received a conditional discharge.

B.  *The Proceedings Below*

In an indictment filed August 17, 2015, Singh was charged with one count of illegal reentry into the United States after having been removed following a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).  On December 21, 2015, Singh appeared before Magistrate Judge Henry B. Pitman and pleaded guilty to the sole count of the Indictment, without a plea agreement.  Judge Pitman recommended that the district court accept the plea.  The district court accepted the plea by order filed January 12, 2016.

On March 18, 2016, the Probation Office submitted a Presentence Investigation Report (the "PSR") in anticipation of sentencing.  The Probation Office computed the Total Offense Level as 13, based on a base level for illegal reentry of 8; an 8-level increase because Singh was deported following a conviction for an aggravated felony; and a 3-level reduction for acceptance of responsibility.  The PSR noted that Singh had "clearly demonstrated acceptance of responsibility for the offense" and had "assisted authorities in the investigation or prosecution of [his] own misconduct by timely notifying authorities of the intention to enter a plea of guilty."  PSR, ¶¶ 36, 37.  The Probation Office noted

that Singh had eight prior convictions, as discussed above, but concluded that the convictions resulted in only three criminal history points, placing Singh in Criminal History Category II. Six of the eight convictions carried zero criminal history points.[2] *See* U.S. Sentencing Guidelines Manual § 4A1.2(e)(1), (2), (3). The PSR calculated a Guidelines range of imprisonment of 15 to 21 months and recommended a sentence of 21 months.

Singh submitted a sentencing memorandum, with attachments, including letters from his family, and requested a below-Guidelines sentence of time served (he had served almost nine months). The government submitted a sentencing letter requesting a sentence "within the applicable Guidelines range of 15 to 21 months' imprisonment," stating that "such a sentence would be sufficient

---

[2]    The Probation Office did not explain why the six convictions carried zero criminal history points beyond citing § 4A1.2(e)(3) of the Guidelines. That section provides that "[a]ny prior sentence not within the time periods specified above is not counted." U.S. Sentencing Guidelines Manual § 4A1.2(e)(3). Subsections (2) and (3) provide that certain prior sentences *are* counted: (1) prior sentences of imprisonment exceeding one year and one month imposed within fifteen years of the "commencement of the instant offense"; (2) prior sentences of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated within the fifteen-year period; and (3) prior sentences imposed within ten years of the "commencement of the instant offense." *Id.* § 4A1.2(e)(1), (2). Here, it is not clear when Singh commenced the instant offense as the record does not establish when he reentered after his May 16, 2012 removal, but he was found here on June 26, 2014. If that is considered the commencement date, none of the six convictions involved sentences imposed within the prior ten years and none resulted in a sentence of imprisonment exceeding one year and one month. Four of the sentences were imposed more than fifteen years earlier -- indeed, more than twenty years earlier.

but not greater than necessary to serve the legitimate purposes of sentencing."

App. at 79, 82. The government agreed with the Probation Office's calculation of

Singh's recommended sentence, which included a three-level reduction "based

on the defendant's acceptance of responsibility." *Id.* at 80.

By letter dated February 16, 2016, Singh wrote directly to the district

court. The letter stated in part as follows:

> Your Honor I'm So Sorry For my Action or wrongdoing. I've
> Realise my Action were wrong. I've causes the courts and the
> citizen of United States, Also my Family allot of pain and trouble.
> Your Honor I've Hurts my Daughter, wife, mother, Father and
> Family Feeling so much.

> Your Honor at the time of all my conviction in the past, I've
> allot of Bad Friend and Company who I follow and do bad thing.
> Your Honor I wasn't thinking what I was getting into or doing. I
> Follow my Friend and take thing playful and Funny. Your Honor I
> was Foolise, selfish and dumb.

> Your Honor I Came Back to United States Because I was Fear
> for my life. I was in Danger in Guyana which I was attack, Beaten
> up, Robbed and threatened to Be kill for my money and other thing.

> Your Honor I've No family in Guyana. My wife, child,
> Mother, Father and all my sister and Brother are Residing in the
> United States. Your Honor I was all alone in Guyana and Scare.

> . . .

> Your Honor I only Came Back Because I was in Danger and
> Fear For my life and to Be with my Family. I'm sorry for Breaking

the law.  I'm Begging for another chance.  Please my only Daughter is very worry about what's going to happen to her Father.

Your Honor these long Jail months have taught me hard lesson, not to do anything wrong again.  Your Honor From my heart I promise I will not Break the Law again For the sake of my daughter and Family.

App. at 76-78.

Sentencing proceeded on April 8, 2016.  That morning, the district court issued an order notifying the parties that it was "seriously considering an upwards variance in connection with the sentencing of Mr. Singh."  App. at 83.

At the sentencing, the district court adopted the factual findings set forth in the PSR.  The district court then explained that it was not "inclined" to allow Singh a deduction for acceptance of responsibility because of certain statements Singh made in his letter:  first, Singh's statement that he reentered because he feared for his life "appear[ed] to indicate his attempt to avoid responsibility for the crime," and, second, his statements that "he had been under the influence of bad friends" and had "done things thinking they were playful and funny" and that he had been "foolish and selfish" demonstrated that Singh "certainly does attempt to avoid responsibility for the aggravated felony."  App. at 90-92.

As to Singh's statements that he had been threatened in Guyana, defense counsel represented that "[f]rom day one Mr. Singh has told me and my office that he was attacked, robbed, and in danger down in Guyana and that was a portion of his motivation for returning." App. at 99. Counsel represented that "Mr. Singh has never said otherwise. In fact, he has been explicit and clear about the threats that he was under in Guyana. He was robbed, beaten with a gun and put in [a] hospital in Guyana." *Id.* Counsel further reported that Guyanese of Indian descent who returned to Guyana were often targeted for robberies, especially after having lived in the United States. Counsel explained that he did not "focus" on these issues in his sentencing submission because the information was uncorroborated. The district court responded to defense counsel by stating "I accept your statement." *Id.* at 100.

The district court then advised the parties that it had determined to give Singh the acceptance of responsibility deduction, noting "I don't want to create an appeal point relating to whether or not [USSG §] 1B1.3, relevant conduct, will or will not, in an illegal reentry situation, include certain things related to an aggravated felony." *Id.* The district judge stated, however, that "I will consider the various issues that I have with acceptance of responsibility under [18 U.S.C. §] 3553(a), in light of all the information." App. at 100. The

district court concluded, as the PSR had recommended and the parties agreed, that the Guidelines calculation was a Total Offense Level of 13 and a Criminal History Category of II for a range of 15 to 21 months' imprisonment.

The district court and the parties then turned to a discussion of the § 3553(a) sentencing factors. In the end, the district court imposed a sentence of 60 months' imprisonment. The court explained as follows:

> I do not see this as a heartland case for illegal reentry. I see this as a case where we have a defendant who has repeatedly harmed the public. While he has not engaged in drug offenses or violent offenses, the kinds of crimes he is engaged in relate to a variety of conduct which is harmful, and it is harmful to members of the public. The public shouldn't be exposed to it. It's repeated and it's repeated so often and so brazenly that I do not have any hope. I have no expectation, frankly, that it could stop. I don't know what the issue may be that's causing it. . . .

> I don't believe he can live here honestly. I don't believe he has any right to live in this country at all. I believe that he has no right to be present on U.S. soil. I think he should be deported back to Guyana and he can make his life in Guyana as he deems appropriate. It could have been different, but it's not.

> I think reentry for him in terms of personal deterrence, it plays a very, very important role in his sentence. I think reentry is highly likely. Indeed I would say that I think reentry is almost certain, an attempt at reentry is almost certain for this defendant. He has done it two times before. There is nothing at all in the record at all to indicate he wouldn't do it again. . . .

> I do take into consideration the fact that this defendant has spent the majority of his life in the United States. It is also the fact

-11-

that I take into consideration that he has spent the majority of his adult life back and forth. He has committed a lot of crimes and he has had a lot of opportunities to lead a different life. So all of these factors I take into consideration. . . .

. . . I put out the notice this morning that the court was considering an upward variance, a variance because I do not believe, as I've said before, that the guidelines appropriately take into consideration the totality of the circumstances that are at issue here with the defendant's background, with the prior leniency that's been shown to the defendant, with his multiple reentries. So it's not just a single reentry after a single aggravated felony. It's actually more than that. And I do believe that the consistent history of his crimes indicates that there is a very high likelihood of recidivism. I think it's an unusually high likelihood of recidivism.

Since I'm convinced that he will reenter and commit more crimes, I do believe there is some need for and a strong need for incapacitation for some period of time. In other words, I do not believe that deportation right now actually serves the public interest. I believe that the public interest in this country is best served by a period of incapacitation, which will prevent reentry. . . .

I believe that time served, something that would then send this defendant on now to the immigration authorities and into immigration custody, would be the wrong message. It would be the wrong message and I think it would be most likely to inspire the defendant and incent the defendant to return. I also think that21 months, which is the guidelines range, is far too little to achieve the goals that I am considering necessary under all of the factors under 3553(a).

Based upon the particular facts and circumstances relating to this defendant, having thought long and hard about all of the facts and circumstances of this defendant, I do believe that a sentence of 60 months is appropriate. A period of 60 months is a sufficient but not greater than necessary sentence. It is an upwards variance.

> However, it does provide the incapacitation which this court believes is absolutely necessary to prevent the nearly immediate reentry which I believe will occur.

App. at 109, 112-17.

The district court entered judgment on April 11, 2016. On April 20, 2016, Singh's counsel wrote a letter to the district court requesting a recommendation that the Bureau of Prisons designate Singh to the Moshannon Valley Correctional Center in Pennsylvania. By memorandum endorsement dated the same day, the district court denied the request, writing that "[a]pplications for designation should generally be made at the time of sentencing," and stating: "The Court will not now, for this defendant, make such a recommendation." App. at 123.

This appeal followed.

## DISCUSSION

### A.    *Applicable Law*

We review a sentence for procedural and substantive reasonableness under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007); *see United States v. Broxmeyer*, 699 F.3d 265, 278 (2d Cir. 2012) ("our standard is 'reasonableness,' 'a particularly deferential form of abuse-of-discretion review'") (quoting *United States v. Cavera*, 550 F.3d 180, 188 & n.5 (2d

Cir. 2008) (*en banc*)); *accord United States v. Thavaraja*, 740 F.3d 253, 258 (2d Cir. 2014).

A sentence is procedurally unreasonable if the district court "fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013) (internal quotation marks omitted). We will set aside a sentence as substantively unreasonable only in "exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *Cavera*, 550 F.3d at 189 (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)). We will identify "as substantively unreasonable only those sentences that are so 'shockingly high, shockingly low, or otherwise unsupportable as a matter of law' that allowing them to stand would 'damage the administration of justice.'" *Broxmeyer*, 699 F.3d at 289 (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)).

Our review for substantive unreasonableness is "particularly deferential." *Broxmeyer*, 699 F.3d at 289 (citing *Gall*, 552 U.S. at 51). The Supreme Court has made clear that "responsibility for sentencing is placed largely in the precincts of the district courts." *Cavera*, 550 F.3d at 191. Hence, "our role in

-14-

sentencing appeals is to 'patrol the boundaries of reasonableness,'" *Rigas*, 583 F.3d at 122 (quoting *Cavera*, 550 F.3d at 191), with due respect for the sentencing court's "very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime," *Cavera*, 550 F.3d at 188. Though the standard for finding substantive unreasonableness is high, this Court has not shied away from doing so when appropriate. *See United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010) ("[I]t would be manifestly unjust to let Dorvee's sentence stand."); *United States v. Jenkins*, 854 F.3d 181, 188 (2d Cir. 2017) ("We conclude that the factors upon which the district court relied . . . cannot bear the weight of the sentence the district court imposed.").

District courts are to use the Guidelines as a "starting point," and then make an independent sentencing determination, taking into account the "nature and circumstances of the offense and the history and characteristics of the defendant," and all the statutory factors. *Cavera*, 550 F.3d at 188 (quoting 18 U.S.C. § 3553(a)). Sentencing courts are not to "presume that the Guidelines range is reasonable," and instead they "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.

Where there is a variance from the Guidelines range, on appellate review, "'we may take the degree of variance into account and consider the

extent of a deviation from the Guidelines'. . . . '[A] major departure should be supported by a more significant justification than a minor one.'" *United States v. Stewart*, 590 F.3d 93, 135 (2d Cir. 2009) (quoting *Gall*, 552 U.S. at 47, 50).

**B.**   *Application*

Singh challenges his sentence on both procedural and substantive grounds. While we usually address the procedural arguments first in sentencing appeals, here we begin with the substantive challenge because it informs our analysis of the procedural arguments.

**1.**   *Substantive Unreasonableness*

As the Supreme Court has observed in a different context, "the measure of what is conscience shocking is no calibrated yard stick." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *accord O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005) ("The shocks-the-conscience test is necessarily imprecise."). In this case, on this record, even if Singh's sentence does not *shock* the conscience, "it at the very least *stirs* the conscience." *United States v. Aldeen*, 792 F.3d 247, 255 (2d Cir. 2015).

The district court imposed a sentence of 60 months' imprisonment for an illegal reentry case, where the Guidelines range was only 15 to 21 months and the government and the Probation Office had both recommended a within-

Guidelines sentence. The district court imposed a sentence almost three times

the high end of the Guidelines range. Moreover, as shown by Sentencing

Commission statistics, the sentence of 60 months drastically exceeded

nationwide norms. In fiscal year 2013, the average sentence for illegal reentry

offenders was 18 months and the median sentence was 12 months. Sentencing

Comm'n, Illegal Reentry Offenses, at 9 (April 2015) ("Comm'n Report"), *available

at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/

research-projects-and-surveys/immigration/2015_Illegal-Reentry-Report.pdf.[3]

An above-Guidelines sentence was imposed in only 1.3% of all illegal reentry

cases, *id.* at 10, and in cases (like the instant one) with an 8-level enhancement for

an aggravated felony, an above-Guidelines sentence was imposed in only 1.2% of

the cases, *id.* at 11 Table 2.

The district court concluded that a substantial variance was

warranted here because of Singh's "consistent history" of criminal conduct and

the "very high likelihood of recidivism." App. at 115.[4] While Singh indeed had

---

[3] The Commission Report shows that the average sentence for illegal reentry cases for 2013 was not significantly different going back to 2009. *Id.* at 10 Fig. 4.

[4] "The particular weight to be afforded aggravating and mitigating factors 'is a matter firmly committed to the discretion of the sentencing judge.'" *Broxmeyer*, 699 F.3d at 289 (quoting *United States v. Fernandez*, 443 F.3d 19, 32 (2d Cir. 2006)). In reviewing for substantive reasonableness, "we do not consider what weight we would ourselves have given a particular factor," but instead we determine whether a factor relied on by a

-17-

eight prior convictions, as the district court acknowledged, however, none involved violence or narcotics trafficking. *See id.* at 109. Six of the eight convictions were more than ten years old. Four were more than twenty years old, counting back from the date of sentencing, and Singh was only 21 and 22 years old when he committed those offenses.[5] The four more recent convictions occurred over the course of fifteen years, and three were so minor they resulted in conditional discharges, that is, the sentencing court did not believe the crime warranted imprisonment or even probation. Moreover, the Sentencing Commission statistics show that 57.2% of illegal reentry offenders were in Criminal History Category ("CHC") III or higher. Comm'n Report at 9. Singh was only in CHC II, and yet he was sentenced to more than three times the national average for *all* illegal reentry offenders, 57.2% of whom were in a higher CHC.

---

sentencing court "can bear the weight assigned it under the totality of circumstances in the case." *Cavera*, 550 F.3d at 191.

[5]    As the Supreme Court has observed, "Our cases recognize that 'youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage.' . . . A lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions." *Johnson v. Texas*, 509 U.S. 350, 367 (1993) (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982)); *see also Graham v. Florida*, 560 U.S. 48, 74 (2010) (holding that life without parole for juveniles is unconstitutional, in part because of "a juvenile nonhomicide offender's capacity for change and limited moral culpability").

-18-

As we note above, a major variance must be supported by "a more significant justification." *United States v. Stewart*, 590 F.3d at 168 (quoting *Gall*, 552 U.S. at 47, 50). In the context of the Sentencing Commission's statistics for illegal reentry cases and all the circumstances here, we are not persuaded, on this record, that the justification offered by the district court was sufficient to support the magnitude of the variance. *See Cavera*, 550 F.3d at 189. Our concern is heightened by the procedural issues we turn to now.

**2.** ***Procedural Reasonableness***

We have two areas of concern with respect to procedural reasonableness. First, there may have been factual errors in the district court's discussion of the record. Second, the district court's reluctance to credit Singh's acceptance of responsibility (although it did so in the end) suggests that the district court may have conflated Singh's statements in mitigation with a failure to accept responsibility.

**a.** ***Factual Issues***

As to the apparent factual errors, the district court concluded that "reentry is almost certain, an attempt at reentry is almost certain for this defendant. He has done it two times *before*." App. at 113 (emphasis added). The district court also referred to "the multiple[] numbers of times that he has been

arrested and spent time in jail and been deported." *Id*. at 114. These comments suggest that the district court believed that Singh had been guilty of two earlier illegal reentries and that it was sentencing him for a third illegal reentry. Indeed, the PSR had erroneously stated that "the instant offense is the defendant's third arrest for illegally reentering the United States," PSR at 23, a statement the parties acknowledge was wrong. In fact, Singh had been arrested for illegal reentry only twice -- including for the instant offense. While the government argues on appeal that the district court might have been including the current offense in its comments and that the district court understood there were two and not three illegal reentries all together, the district court's words suggest otherwise.

The district court also concluded that Singh "has spent the majority of his adult life back and forth," that is, between Guyana and the United States. App. at 115. In fact, however, Singh, who was 44 years old at the time of sentencing, was not deported for the first time until 2010, when he was nearly 39. It was simply not correct that he had spent "the majority of his adult life back and forth." To the contrary, he had spent the majority of his adult life living in the United States. The district court's conclusion that Singh was "almost certain" to illegally reenter again surely was influenced by these apparently erroneous views of the facts.

-20-

Finally, the district court determined as a factual matter that this was "a defendant who has repeatedly harmed the public. . . . [T]he kinds of crimes he is engaged in relate to a variety of conduct which is harmful, and it is harmful to members of the public. The public shouldn't be exposed to it. It's repeated and it's repeated so often and so brazenly that I do not have any hope." App. at 109. The district court further commented: "I am indeed almost certain that this defendant will try to reenter. I also believe that he will then be extremely likely to commit additional crimes, which exposes the American public to crimes from this individual." *Id.* at 114.

We are not persuaded that the district court's abject view of Singh's record and prospects for reform is supported by the record. As discussed above, although Singh had eight prior convictions, the district court may have overstated their seriousness. Four of the convictions were more than twenty years old, involving crimes committed by Singh when he was only 21 or 22 years old, and two others were some more than ten years old. None involved guns or violence or narcotics. Three of the more recent convictions resulted only in conditional discharges, without any term of prison or probation. A sentencing judge has the formidable task of trying, to some extent, to predict the future, as she must determine whether the defendant has really learned his lesson, whether

he is likely to break the law again, and whether he will be able to turn his life around for the better. While the trial judge's decisions on these difficult matters are entitled to great deference, we do not believe the record here supports the trial court's apparent conclusion that Singh was essentially beyond redemption. *See Yuen Jung v. Barber*, 184 F.2d 491, 495 (9th Cir. 1950) ("All modern legislation dealing with crime and punishment proceeds upon the theory that aside from capital cases, no man is beyond redemption.").

A sentencing determination based on clearly erroneous factual findings is procedurally unreasonable. *See United States v. Chu*, 714 F.3d at 746; *United States v. Cossey*, 632 F.3d 82, 86 (2d Cir. 2011) (per curiam). A variance such as that imposed here -- some three times the high end of the range -- must be based on an accurate reading of the record. A remand for clarification of the facts is therefore appropriate. *See United States v. Juwa*, 508 F.3d 694, 699-700 (2d Cir. 2007) (remanding for resentencing where there was uncertainty as to whether district court had assumed defendant had engaged in "*multiple* instances of sexual abuse, as opposed to [a] single instance").

### b.     *The Question of Acceptance of Responsibility*

At the outset of the sentencing, the district court explained that it was not "inclined to allow the acceptance of responsibility deductions." App. at

90. After hearing from counsel, the district court advised that it did not "want to create an appeal point" and granted Singh the acceptance points, but noted that it would consider the acceptance of responsibility issues "under 3553(a)." App. at 100. Hence, despite giving Singh credit for acceptance of responsibility, the district court remained concerned that Singh had not fully accepted responsibility. The concern emanated from statements in Singh's letter to the court that he had been acting foolishly and selfishly, under the influence of friends, when he committed his earlier crimes and that he had returned to the United States in part for fear of his life in Guyana.

It appears that the district concluded that Singh's comments in his letter were a basis for imposing a higher sentence and that the district court may have imposed a substantive variance and punished Singh for trying to offer explanations for his conduct. If indeed the district court conflated Singh's statements in mitigation with a failure to accept responsibility, then it committed procedural error.

Considered as a whole, Singh's letter was an apology and a statement of remorse. It was a plea for mercy and an attempt to explain his motivations. Singh stated that he was "so sorry" for his actions and admitted that he had engaged in "wrongdoing." App. at 76. He acknowledged that he had

caused his family and others a lot of "pain and trouble." *Id.* He explained that his "long jail months" (he had been in prison for more than eight months at the time) had taught him a "hard lesson, not to do anything wrong again." *Id.* at 78. He promised not "to break the law again for the sake of [his] daughter and family." *Id.* It was in this context that Singh made the statements of concern to the district court.

A defendant's acceptance of responsibility and his assertion of mitigating circumstances are not necessarily inconsistent or incompatible. The concepts are related but independent. *Cf. United States v. Douglas*, 569 F.3d 523, 527 (5th Cir. 2009) ("We hold that 'lack of remorse' and 'acceptance of responsibility' can be separate factors and that a district court may consider each independently of the other."); *United States v. Andrews*, 390 F.3d 847-48 (5th Cir. 2004) (holding, in pre-*Booker* case, that district court erred in upwardly departing from Guidelines range on grounds defendant "had not completely accepted responsibility," where it had granted defendant acceptance-of-responsibility reduction in calculating range).

The Guidelines authorize a two-step decrease in offense level if a defendant "clearly demonstrates acceptance of responsibility." U.S. Sentencing Guidelines Manual § 3E1.1(a). An additional one-step decrease is available,

"upon motion of the government," where the defendant's offense level without any acceptance-of-responsibility credit is at least 16 and his "timely" notification of his intent to plead guilty saves the government from preparing for trial and permits "the government and the court to allocate their resources efficiently." *Id.* § 3E1.1(b); s*ee generally United States v. Delacruz*, 862 F.3d 163, 177 (2d Cir. 2017). "'[T]he paramount factor in determining eligibility for § 3E1.1 credit is whether the defendant truthfully admits the conduct comprising the offense or offenses of conviction.'" *United States v. Kumar*, 617 F.3d 612, 637 (2d Cir. 2010) (quoting *United States v. Teyer*, 322 F. Supp. 359, 376 (S.D.N.Y. 2004)).  In deciding whether to grant acceptance-of-responsibility credit, the district court is to consider, *inter alia*, whether the defendant "truthfully admit[ed] the conduct comprising the offense(s) of conviction, and truthfully admit[ed] or not falsely den[ied] any additional relevant conduct."  U.S. Sentencing Guidelines Manual § 3E1.1 Application Note 1(A).  A defendant is not required, however, "to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction" to qualify for the reduction.  *Id.; see United States v. Zapata*, 1 F.3d 46, 49-50 (1st Cir. 1993) (conduct underlying an "aggravated felony" for purposes of 8 U.S.C. § 1326(b)(2) is not conduct "part of the instant offense" under § 4A1.2(a)(1) nor relevant conduct).

A defendant has an "absolute right" to be heard at sentencing to offer mitigating circumstances. *United States v. Feng Li*, 115 F.3d 125, 132-333 (2d Cir. 1997) (citation and internal quotation marks omitted). Rule 32 of the Federal Rules of Criminal Procedure requires the court, before imposing sentence, "to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). A defendant's right to "attempt to mitigate punishment" has "historical roots in the common law," and "the opportunity to plead for mercy is another provision in a procedural body of law designed to enable our system of justice to mete out punishment in the most equitable fashion possible, to help ensure that sentencing is particularized and reflects individual circumstances." *Feng Li*, 115 F.3d at 133 (quoting *United States v. Barnes*, 948 F.2d 325, 328 (7th Cir. 1991)) (internal quotation marks omitted).[6]

Singh's assertions that he was "foolis[h], selfish and dumb" when he followed his friends in committing crimes some twenty years earlier, when he was only 21 or 22 years old, and that he returned to the United States in part for fear of his life (and to be with his family) were not, in our view, inconsistent with his acknowledgment of responsibility and wrongdoing. App. at 77. These

---

[6] *See also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

comments did not indicate a lack of remorse, but were merely an effort by Singh to explain *why* he broke the law. He truthfully admitted the conduct comprising the offense of conviction. A defendant's motivation for engaging in criminal conduct is unquestionably a proper consideration at sentencing. *See, e.g., Stewart*, 590 F.3d at 140-41 ("In evaluating culpability, we cannot discount the relevance of the defendant's motivations -- i.e., whether mercenary, *see, e.g.*, 18 U.S.C. § 1958 (murder for hire), or born from a commitment to the use of violence."); *United States v. Hansen*, 701 F.2d 1078, 1083 (2d Cir. 1983) (noting "'the long unbroken tradition of the criminal law that harsh sanctions should not be imposed where moral culpability is lacking'" (quoting *Lennon v. INS*, 527 F.2d 187, 193 (2d Cir. 1975))); *accord Porter v. McCollum*, 558 U.S. 30, 41 (2009) (holding that defense counsel failed to provide effective assistance where "[t]he judge and jury at [defendant's] original sentencing heard almost nothing that would humanize [defendant] or allow them accurately to gauge his moral culpability").[7]

---

[7]  "Consider, for example, a dutiful son who commits bank fraud to fund a necessary medical caretaker for his aged mother. Because this defendant's motive to provide for his mother makes him less culpable than a defendant who commits the same fraud to finance unneeded luxuries, a court might reasonably conclude that the dutiful son's 'family circumstances' call for a lesser sentence . . . ."  Douglas A. Berman, *Addressing Why: Developing Principled Rationales for Family-Based Departures*, 13 Fed. Sent'g Rep. 274, 277 (2001).

There may be cases, of course, where a defendant's claim of mitigating circumstances does undermine his acceptance of responsibility, and the district court may take that lack of genuineness into account. *See* U.S. Sentencing Guidelines Manual § 3E.1 Application Note 3. An example is provided by *United States v. Douglas*, in which the Fifth Circuit affirmed a sentence where the district court granted acceptance-of-responsibility credit but then upwardly departed because of the defendant's lack of remorse. 569 F.3d at 527-28.

There the defendant was charged with felony possession of a weapon; he had handed a loaded handgun to a child who then accidentally shot himself. The district court awarded the defendant acceptance-of-responsibility credit, but departed above the Guidelines range because of the defendant's lack of remorse. *Id.* The sentencing allocution included the following exchange:

> The Defendant: I have nothing to say. I have nothing to say your honor.

> The Court: So you have not learned anything from the offense?

> The Defendant: Have I learned anything?

> The Court: That's exactly what I asked.

> The Defendant: I should have stayed in Mexico. I shouldn't

have come back.

The Court:   You have no remorse for what happened?

The Defendant:  I didn't do it.  He [the child] done it to himself.

*Id.* at 525.  In contrast, in this case, Singh *did* show remorse.  His efforts to seek mercy did not undermine his acceptance of responsibility.

"Sentencing, that is to say punishment, is perhaps the most difficult task of a trial court judge."  Jack B. Weinstein, *Does Religion Have a Role in Criminal Sentencing?*, 23 Touro L. Rev. 539, 539 (2007).  While there are many competing considerations in every sentencing decision, a sentencing judge must have some understanding of "the diverse frailties of humankind."  *See Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) (plurality opinion).  In deciding what sentence will be "sufficient, but not greater than necessary" to further the goals of punishment, 18 U.S.C. § 3553(a), a sentencing judge must have a "generosity of spirit, that compassion which causes one to know what it is like to be in trouble and in pain."  Guido Calabresi, *What Makes a Judge Great: To A. Leon Higginbotham, Jr.*, 142 U. Pa. L. Rev. 513, 513 (1993); *see also* Edward J. Devitt, *Ten Commandments for the New Judge*, 65 A.B.A. J. 574 (1979), *reprinted in* 82 F.R.D. 209, 209 (1979) ("Be kind.  If we judges could possess but one attribute, it should be a

kind and understanding heart.  The bench is no place for cruel or callous people regardless of their other qualities and abilities.  There is no burden more onerous than imposing sentence in criminal cases.").

To the extent the district court increased Singh's punishment because of a perception that in attempting to explain his actions and plead for mercy he did not fully accept responsibility, it committed procedural error.

C.    *The Request for Reassignment*

Singh requests that we order that the case be reassigned on remand to a different judge for resentencing.

"Remanding a case to a different judge is a serious request rarely made and rarely granted."  *United States v. Awadallah*, 436 F.3d 125, 135 (2d Cir. 2006).  We will grant a request for reassignment on remand only in "'unusual circumstances.'"  *United States v. Brennan*, 395 F.3d 59, 75 (2d Cir. 2005) (quoting *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977)).  We are not persuaded that reassignment is necessary or appropriate here.  We are confident that on remand the experienced and capable district judge will conduct a full resentencing, in compliance with all procedural requirements, and impose a sentence that is fair, reasonable, and sufficient but not longer than necessary to meet the goals of justice.

## CONCLUSION

The judgment of the district court is **VACATED** and the case is

**REMANDED** for resentencing.  The mandate shall issue forthwith.